UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

REUBEN AVENT,

                                        Plaintiff,

                vs.                                                      9:05-CV-1311
                                                                        (FJS/GJD)
JOHN DOE, et al.,

                                        Defendants.

_____

REUBEN AVENT, Plaintiff pro se
JAMES J. SEAMAN, Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Frederick J. Scullin, Jr., Senior United States District Judge pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that defendants denied

him access to courts and denied him access to the prison grievance program in

violation of his federal constitutional rights. (Dkt. No. 8).  Plaintiff seeks injunctive

and substantial monetary relief.

Presently before the court is defendants' motion to dismiss pursuant to FED. R.

CIV. P.12(b)(6). (Dkt. No. 22).  Plaintiff has opposed defendants' motion. (Dkt. No.

23).  Defendants' have filed a reply. (Dkt. No. 24).  Plaintiff filed a later motion for

"joinder," and defendants have responded in opposition to that motion. (Dkt. Nos. 25,

28).  This court will consider all the pending motions in this recommendation.

**DISCUSSION**

**1.**   **Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).  The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).  When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b).

However, when a plaintiff chooses not to attach or incorporate by reference a document upon which he solely relies and that is integral to the complaint, the court may take the document into consideration without converting the motion. *Internat'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  In

2

order to be "integral" to the complaint, the complaint must rely heavily on the document's terms and effect." *Young v. Lee*, 432 F.3d 142, 146-47 (2d Cir. 2005)(citations omitted).  If the court is to consider this type of document, it must be clear that no dispute exists regarding the authenticity or accuracy of the document and that no material dispute exists regarding the relevance of the document. *Falkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  One of the most important considerations is that when considering the sufficiency of a pro se complaint, the court must afford the plaintiff great liberality and apply less stringent standards than when a party is represented by counsel. *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996).

## 2.   <u>Facts</u>

Plaintiff begins the factual portion of his amended complaint by stating that in late 2004, he attempted to file a grievance at Coxsackie Correctional Facility "with" defendant Inmate Grievance Program (IGP) Supervisor Schweber. Amended Complaint (AC) ¶ 10.  The subject matter of this grievance was apparently the alleged denial of plaintiff's personal and legal property for a period of "several hours." *Id.* This grievance also allegedly "expressed [plaintiff's] concern" over his legal materials relating to a federal action that he was pursuing, which also alleged the deprivation of legal property. AC ¶ 11.

According to plaintiff, defendant Schweber would not allow plaintiff to file this grievance because there was a policy of denying inmates the right to pursue grievances that could ultimately lead to a civil suit against officers, officials, and against the State itself. AC ¶ 12.  Plaintiff states that he later filed a grievance with

3

defendant Thomas Eagen, claiming that he was not allowed to file the previously mentioned grievance "complaining of the imminent unconstitutional deprivation of [plaintiff's] legal property." AC ¶ 13.  Plaintiff states that he was attempting to obtain "precautionary" relief from defendant Eagen, but the grievance to defendant Eagen was rejected, and plaintiff was "left without any administrative relief." *Id.*

Plaintiff states that on July 7, 2005, he was transferred to Mid-State Correctional Facility. AC ¶ 14.  Plaintiff states that he "insisted" at Coxsackie, that one of his bags of "miscellaneous property" be sent to him by mail instead of one of his four other bags, containing "active legal materials." AC ¶ 15.  Plaintiff states that the processing officer refused, and instead forced plaintiff to choose one of the "legal" draft bags to send by mail, rather than allow the bag to travel with plaintiff to Mid-State. AC ¶ 15.  Plaintiff states that he chose the lightest legal draft bag, and that he was charged $ 33.50 to send this bag to Mid-State. *Id.*

Plaintiff alleges that while he was housed at Mid-State he was not allowed to have any legal materials, regardless of any court deadlines. AC ¶ 16.  He states that he was allowed to take "personal" books out of the four bags which apparently contained a great deal of legal material. AC ¶ 17.  Plaintiff states that although there were only four of his bags at Mid-State during July and August, he was not allowed to go through his property, rather the property was spread out over a table and he was forced to point to the personal items that he wanted. AC ¶ 18.

Plaintiff claims that "sometime thereafter," he filed three grievances, apparently claiming that the officials at Mid-State would not let him have his legal materials so

4

that he could pursue his federal lawsuits. AC ¶ 19.  Plaintiff also states that he filed a

motion for an extension of time in one of his federal court cases[1] because Mid-State

would not let him have his legal materials for his "active" cases. AC ¶ 19.  Plaintiff

states that although all three grievances were filed, he was made to "sign off" on them

after IGP Supervisor, Virkler (not named as a defendant in this case) and an unknown

Sergeant visited plaintiff's cell and told him to just write to the courts for an extension

of time. AC ¶¶ 20-21.

Plaintiff claims that the unknown Sergeant told plaintiff that if he "want[ed] to

be an asshole, and take it to a hearing," they could be "asshole[s]" too. AC ¶ 20.

Plaintiff appears to state that one of the three grievances was against defendant

Corrections Officer Jones, the Mid-State Law Library officer who delivered books to

inmates confined in the Special Housing Unit[2] (SHU). *Id.*  Plaintiff complained that

this individual did not hand out paper, envelopes, or carbon paper to inmates so that

they could draft "legal motions." AC ¶ 21.

Plaintiff states that the following week, his cell was searched by defendant

Jones, who placed handcuffs and shackles on plaintiff that were so tight they "could

have" cut into plaintiff's flesh. AC ¶ 22.  Plaintiff then "spoke to" defendant Jones

regarding whether this was done in retaliation for the grievance about the Law

Library, and defendant Jones allegedly told plaintiff that if he "wanted" his

---

[1] *Avent v. Filion*, 03-CV-6709 (SDNY).

[2] Plaintiff was apparently confined to the Special Housing Unit upon his arrival at Mid-State.

5

constitutional rights, he should not "come to prison" and then told plaintiff that he had money to buy paper. *Id.*

Plaintiff claims that on several occasions while plaintiff was "double bunked" with another inmate, he and plaintiff were deprived of legal books, paper, envelopes, and carbon paper by defendant Jones. AC ¶ 23.  Plaintiff claims that "sometime" in early September of 2005, plaintiff "finally received his legal draft bag" after he had filed several grievances and claim forms regarding the bag that had been mailed separately from Coxsackie. AC ¶ 24.  Plaintiff states that he was taken to get his property by defendant Jones. AC ¶ 24.

Plaintiff alleges that on September 5, 2005, three days after he received his legal draft bag, he was "packed up" by defendants John and Jack Doe, who told plaintiff and his roommate to go out to the recreation pen while Jack Doe took plaintiff's full draft bag of legal work and other personal property. AC ¶ 26.  Plaintiff claims that defendant Jack Doe returned to plaintiff's cell and forced plaintiff to sign an incomplete I64 form,[3] over plaintiff's objections. AC ¶ 27.  Plaintiff states that he objected to signing the form because it only took defendant Jack Doe ten minutes to complete the form, and he could not have gone through all plaintiff's property in that short period of time. *Id.*

Plaintiff states that he was transferred to Downstate Correctional Facility on September 6, 2005 and then to Auburn Correctional Facility on September 7, 2005.

---

[3] The I64 form appears to be an inventory form for an inmate's property that is transferred from one facility to another. *See* Plaintiff's Exs. F1 & F2.

AC ¶ 28.  Plaintiff states that when he was given his property on September 9, 2005, there were only four draft bags and no I64 form. AC ¶ 29.  Plaintiff states that "days later," he found out that his "3 other legal draft bags" were "plundered of all his active legal work," and it appears that plaintiff is claiming that the other property that he had in his Mid-State cell was mixed in with his "missing" legal materials." AC ¶ 29.

Plaintiff states that he did not know whether "such" was done in good faith, whether the materials were mailed "sua sponte" by Mid-State, or whether the property was "unlawfully deprived and destroyed." AC ¶ 30.  Thus, plaintiff states that on September 12, 2005, he filed a grievance, stating that plaintiff had a fifth draft bag that was not accounted for, nor did he have an I64 form detailing his property. *Id.*  Plaintiff stated that this fifth bag contained important legal work that he needed for "immediate court deadlines." *Id.*  Basically, he was requesting why Mid-State did not send the bag, and if the facility had sent the bag, plaintiff wished to know its location. *Id.*

Plaintiff alleges that shortly thereafter, he filed another grievance and also sent letters to the courts in which his "active" actions were pending, stating that he had been "deprived" of his legal materials and requesting whatever relief was possible. AC ¶ 31.  On September 20, 2005, plaintiff states that he filed a "lost property" claim with the Auburn Inmate Accounts Officer, and on September 27, 2005, he wrote to Auburn's Grievance Committee and Inmate Accounts Officer, telling them that he filed a grievance on September 12, 2005 and that he did not receive a hearing or any other response. AC ¶ 32.

Plaintiff states that on September 27, 2005, the same day that he wrote the

above letters, he received a denial of the property deprivation grievance, and he immediately appealed this denial to defendant Superintendent Graham. AC ¶ 33. Plaintiff also received his I64 forms in the facility mail on September 27, 2005. AC ¶ 34. Plaintiff claims that neither of the two I64 forms accompanied plaintiff's four bags of property when the bags were given to him at Auburn. AC ¶ 35. Plaintiff states that there was no notification that extra property bags were either kept or mailed by Mid-State. AC ¶ 35.

Plaintiff then asserts that the lack of a "reasonable printed name or signature" of either John or Jack Doe on the I64 forms implies that these defendants acted with the "intention of destroying and/or obtaining" some of plaintiff's legal documents and with the intent of destroying or depriving plaintiff of materials that might be important to his cases. AC ¶ 36.

Plaintiff then states that the draft bags, issued by the Department of Correctional Services, are all equal in size and that plaintiff had one bag full of miscellaneous items, and four bags of legal materials consisting of paper, including the bag that cost plaintiff $ 33.50 to send when he was transferred to Mid-State. AC ¶ 38. Plaintiff then states that during his stay at Mid-State "he collected another 10 pounds of legal papers," and that it was impossible for plaintiff's fifth bag, containing all his legal papers to cost him only $ 18.26 to mail. AC ¶ 39. Plaintiff seems to be alleging that if the bag was only going to cost $ 18.26 to mail, then it could not contain all the legal documents that it should have and thus, some documents must have been destroyed.

Plaintiff states that on September 28, 2005, he again wrote to all the courts in

8

which he had pending actions notifying them of this problem, and he also sent the letter as a grievance to Mid-State SHU, so that they would not destroy the materials, pending an investigation "to assure the lawful return of [plaintiff's] property in full and not just $ 18.26 worth of it in weight." AC ¶ 40.

Plaintiff alleges that his Mid-State grievance was rejected on October 4, 2005, and he was told to file the grievance at Auburn, his current facility. AC ¶ 41 & Plaintiff's Ex. J.  On the same day, plaintiff filed the grievance at Auburn, but it was rejected by defendant Parmiter because it was "untimely." AC ¶ 42.  Plaintiff alleges that defendant Parmiter rejected the grievance "informally" rather than with an "official" response. *Id.* & Plaintiff's Ex. L.

Plaintiff states that he filed another grievance on October 7, 2005, complaining about defendant Parmiter's rejection of the October 4, 2005 grievance and complaining about the lack of a "formal" rejection. AC ¶ 43.  Plaintiff's concern is that because the rejection consisted of what appears to be a "post-it note", plaintiff could later be accused of not attempting to follow the grievance procedure and would then be precluded from obtaining judicial relief because he failed to exhaust his administrative remedies. AC ¶ 43.

Plaintiff also claims that defendant Parmiter acted outside the scope of DOCS Directives when she rejected plaintiff's October 4, 2005 grievance because it was filed within the fourteen day period provided by Directive # 4040. AC ¶ 44.  Plaintiff argues that the grievance was timely because the "acts" were ongoing and new facts were discovered regarding the alleged deprivation of plaintiff's property. AC ¶ 44.

Plaintiff claims that all the defendants were acting according to instructions, training, and official policy of defendants Graham, Perlman, Goord, and Eagen who "directly participated and enforced these actions." AC ¶ 45.  Plaintiff states that each individual acted with actual or implied knowledge and malice toward plaintiff and toward African Americans "in general." AC ¶ 46.  Plaintiff claims that defendants had a policy and custom of interfering and precluding plaintiff from obtaining access to courts. AC ¶ 47.

Plaintiff alleges that defendants deprived him of his legal materials from July 7, 2005 until the filing of the amended complaint. AC ¶ 48.  Plaintiff also claims that defendants had no right to separate plaintiff's "active legal property" from his other property, and did so "maliciously." AC ¶ 49.  Plaintiff alleges that defendants had no right to deprive plaintiff of his "active legal property" and then charge him for its "partial return" after the deprivation was discovered, nor do they have a right to destroy plaintiff's property if he does not pay for the shipping. AC ¶ 50.

Plaintiff states that as a result of defendants' actions he could not file an "opposition Reply Motion" to the Attorney General's papers in plaintiff's Court of Appeals case *Avent v. New York State*, 02-CV-828, App. No. 03-24. AC ¶ 51. Plaintiff also states that he could not file a response in his habeas corpus action, *Avent v. Filion*, 03-CV-6709.  Plaintiff states that the case was "extended" for three months because of defendants' actions. *Id.*  Plaintiff alleges that he is unable to meet the extended deadlines in all his cases, including *Avent v. Solfaro*, 02-CV-914, which was scheduled for submission of a final pretrial order by plaintiff, and he was deprived of

half of his exhibits.  Plaintiff also claims that he is precluded from discovery and substantive motion filing in *Avent v. Annucci*, 04-CV-302. *Id.*  Plaintiff states that his June 2005 discovery request was never answered, and he could not do anything about it because of defendants' actions and now plaintiff's "time to do so" has expired. *Id.* Plaintiff alleges that due to the delay caused by defendants' actions, many of plaintiff's witnesses will have been released from jail and will be difficult to find, thus, material testimonial evidence "has been destroyed by defendants' actions." *Id.*

Plaintiff also appears to allege that defendants Goord and Eagen had an unconstitutional custom or policy and failed to properly train the Inmate Grievance Program (IGP) officials and had a policy or custom of overlooking illegal behavior by these individuals. AC ¶ 55.  Plaintiff states that defendants Eagen, Schweber, and Parmiter improperly used their positions to preclude "any future judicial intervention." AC ¶¶ 56.

A careful reading of the amended complaint shows that plaintiff is making two versions of his access to courts claim.  First, he claims that the failure of defendants to provide him with his fifth draft bag filled with legal materials deprived plaintiff of access to courts. AC ¶¶ 48-51. Second, plaintiff claims that the IGP officials improperly prevented plaintiff from filing grievances so that he would be unable to exhaust his administrative remedies and be precluded from suing in federal court for civil rights violations.[4] AC ¶¶ 54-56.

---

[4] The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a) requires an inmate to exhaust his administrative remedies prior to bringing a federal civil rights action and applies to ***all inmate suits about prison life***, whether they involve general circumstances or particular

3.      **Eleventh Amendment**

Plaintiff seeks damages against the defendants in their "official" as well as individual capacities. It is now well-settled that the state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.

An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991). Thus, to the extent that the complaint seeks damages against defendants in their "official capacities", the complaint may be dismissed. The complaint may proceed as against the defendants in their "individual capacities."

4.      **Access to Courts**

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The Supreme Court has also held that an inmate alleging a denial of access to courts must show **actual injury** as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996). The **cause of the injury** must be inadequacy of the access. *Id.* at

---

episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).

351.  Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v. Casey*, 518 U.S. at 353).

## A.  Improper Grievance Procedures

In his amended complaint, plaintiff names the IGP Supervisor at Coxsackie, Bradley Schweber; the IGP Supervisor at Auburn, Cheryl Parmiter; and the IGP Director in Albany, Thomas Eagen.  Plaintiff also appears to claim that defendant Commissioner Goord and defendant Eagen failed to properly train the IGP officials, making defendant's Goord and Eagen responsible for the IGP defendants' allegedly unconstitutional actions.

The court notes that plaintiff has also named Mid-State Superintendent Kenneth Pearlman and Auburn Superintendent Harold D. Graham as defendants.  Defendants Pearlman and Graham are clearly supervisory defendants.  Although defendant Graham is mentioned in the amended complaint as being involved in the denial of plaintiff's grievances, it is unclear what involvement defendant Pearlman is alleged to have had with respect to plaintiff's case.[5]

---

[5] The court notes that personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and that *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  The court understands that an allegation that the supervisory official had a "policy" that allowed the constitutional violation occurred may be used to support a claim of personal involvement by a supervisory defendant. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)(a supervisory official may be personally involved in a constitutional violation if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue).  Although plaintiff in this case alleges generally that the supervisory defendants had a "policy" supporting these constitutional deprivations, his allegations against defendant Pearlman are almost non-existent.  Additionally, plaintiff does not

Regardless of what plaintiff alleges with respect to the IGP defendants, plaintiff's amended complaint may be dismissed.  First, the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003).  A violation of the inmate grievance procedures does ***not*** give rise to a claim under section 1983. *Cancel v. Goord*, No. 00-Civ. 2042, 2001 U.S. Dist. LEXIS 3440 (S.D.N.Y. Mar. 29, 2001).  Thus, to the extent that plaintiff alleges that grievances were not processed or were not processed properly, whether by the IGP supervisors or defendant Eagen, or alleges that defendants Eagen and Goord did not properly supervise the IGP program, the complaint may be dismissed.

The court is well-aware that plaintiff is claiming ***more*** than the improper processing of his grievances.  Plaintiff claims that defendants are deliberately failing to process grievances so that plaintiff will later be denied access to courts based on his failure to exhaust administrative remedies.  Once plaintiff's claim changes to a denial of access to courts, the standard articulated in *Lewis v. Casey, supra* applies, and plaintiff must show an *actual injury* as the result of defendants actions.  As stated above, plaintiff must show that a non-frivolous action was frustrated or impeded ***due to defendants' actions.*** *Lewis v. Casey*, 518 U.S. at 353.

Plaintiff claims that in "late 2004," plaintiff attempted to file a grievance with

---

claim that he filed grievances or appeals of those grievances at Mid-State that might have been seen by defendant Pearlman.  Thus, the lack of personal involvement would be a separate basis for dismissal against defendant Pearlman.  Since the court is recommending dismissal on the merits, and defendants did not argue this basis for dismissal, it is unnecessary for this court to rely upon this basis and has not done so in this decision.  It is mentioned solely as an alternative.

14

defendant Schweber, alleging that plaintiff had been denied his legal materials for 8-16 hours. AC ¶ 10.  Plaintiff alleges that defendant Schweber did not allow plaintiff to file this grievance because there was a "policy" about allowing grievances that would ultimately lead to a civil suit against the officers or the state. AC ¶ 12.  Plaintiff alleges that he later tried to file a grievance directly with defendant Eagen, complaining that he was not allowed to file a grievance regarding the "imminent" unconstitutional deprivation of his legal property. AC ¶ 13.  Plaintiff states that this grievance was also rejected by defendant Eagen, leaving plaintiff "without any administrative relief." *Id.*

The court notes that even assuming the truth of plaintiff's allegations, he has not shown that there was any actual injury that resulted from either defendant Schweber's or defendant Eagen's actions.  Plaintiff himself states that he was deprived of his legal property for a period of 8-16 hours, and these allegations have ***nothing to do with the ultimate claim*** that he makes in this action regarding deprivation of his legal materials.  Plaintiff makes no claim that the denial of this grievance caused any injury whatsoever.  There is no claim that plaintiff attempted to file a federal action claiming the denial of his legal material, that was denied for failure to exhaust administrative remedies.  Thus, the amended complaint may be dismissed in its entirety as against defendant Schweber.

The court also notes that a defendant's intentional act, preventing plaintiff from filing a grievance has been, and continues to be an ***exception to the exhaustion requirement***. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citation

omitted).  In *Brownell*, the Second Circuit articulated a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement.  The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether ***defendants' own actions inhibiting exhaustion estops them from raising the defense***; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*  There is no incentive for defendants to develop a "policy" preventing inmates from exhausting their administrative remedies since the law is quite clear that the defendants actions may estop them from raising the defense.[6] Even if such a policy existed, in this case, it did not prevent plaintiff from filing any federal non-frivolous actions.

The same is true for defendant Parmiter's alleged denial of a hearing on plaintiff's September 12, 2005 grievance or defendant Parmiter's denial of plaintiff's October 4, 2005 grievance as "untimely."  Plaintiff complains that defendant Parmiter violated DOCS directives by denying the October 4, 2005 grievance with a "peal [sic] off sticker" rather than a "recorded official response." AC ¶ 43 & Ex. L.  Plaintiff

---

[6] Even after *Woodford v. Ngo*, 126 S. Ct. 2378 (2006), where the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies, Justice Breyer, in his concurring opinion, specifically noted that two circuits, the ***Second*** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates***." *Id.* (emphasis added). Thus, if a defendant intentionally prevents a plaintiff from filing a grievance, particularly with the intent of preventing plaintiff's later federal court claim, this will be an exception to the exhaustion requirement.

cannot show that the denial of either grievance prevented plaintiff from filing a lawsuit complaining about the deprivation of his fifth draft bag of property.

Clearly, there was no actual injury since plaintiff has filed ***this lawsuit***, challenging the alleged denial or deprivation of the fifth bag of legal property, and ***defendants in this case have not argued that plaintiff failed to exhaust his administrative remedies***.  Thus, plaintiff can show ***no actual injury*** based upon defendant Parmiter's actions, and the entire complaint may be dismissed as against defendant Parmiter.

Plaintiff claims that either defendant Parmiter failed to mail plaintiff's appeal[7] to defendant Graham or that defendant Graham failed to respond to plaintiff's September 27, 2005 grievance appeal. Plaintiff's Ex. E.  Since plaintiff can show no actual injury as the result of either defendant Parmiter's actions or defendant Graham's actions, the complaint may be dismissed as to both of these defendants, and plaintiff's second cause of action alleging denial of access to courts based upon improper grievance procedures may be dismissed in its entirety.

### B.  Denial of Legal Materials

The basis of plaintiff's claim is that the failure to transfer his fifth draft bag, containing a substantial amount of plaintiff's legal materials, from Mid-State to Auburn caused the denial of plaintiff's access to courts because this bag contained material relevant to four of plaintiff's pending federal cases.  Plaintiff claims that the denial of the legal materials contained in that fifth bag adversely affected his ability to

---

[7] Plaintiff's Ex. K.

pursue his legal actions: *Avent v. Solfaro*, 02 Civ. 914 (S.D.N.Y.); *Avent v. New York*, No. 03-24 (2d Cir.), 02-CV-828 (W.D.N.Y.); *Avent v. Filion*, 03 Civ. 6709 (S.D.N.Y.); *Avent v. Filion, et al.*, 04-CV-302 (N.D.N.Y.).

The court would first point out that plaintiff himself submits an exhibit indicating that he was told on September 23, 2005 that Mid-State Correctional Facility ***still had plaintiff's property***. Plaintiff's Ex. G.  The letter is from Jean M. Yost, Steward and states that in order for Mid-State to forward plaintiff's property, plaintiff would have to pay $ 18.26. *Id.*  Plaintiff could have the postage deducted from his inmate account. *Id.*  The letter did state that if Mid-State were not notified by plaintiff's "Inmate Accounts office" within 30 days, the property would be destroyed. *Id.*

Plaintiff states in the amended complaint that he received this letter. AC ¶ 37. Instead of attempting to obtain this bag, plaintiff implies that this bag could not contain all his legal materials since a bag that he had mailed cost him $ 33.50 to send.[8] AC ¶¶ 38-39.  Plaintiff states that during his stay at Mid-State he "collected another 10 pounds of legal papers," and it was, therefore, "impossible for Avent's 5th bag containing all legal work as before to cost him $ 18.26 to send out." AC ¶ 39.  Thus, without ever seeing the bag or taking inventory of what was in the bag, plaintiff was convinced that somehow his legal property had been removed or destroyed, perhaps

---

[8] There is a four-bag limit when an inmate is transferred from one facility to another. DOCS Directive 4913 *cited in Salahuddin v. Coughlin*, 591 F. Supp. 353, 356-57 (S.D.N.Y. 1984).  Plaintiff is well-aware of this rule since he states that upon his transfer to Mid-State he paid $ 33.50 to ship the fifth bag of property. AC ¶ 15; Plaintiff's Ex. B at p.2.

by the John Doe defendants who had packed his belongings. AC ¶¶ 25-27.

Instead, plaintiff filed this action on October 18, 2005. (Dkt. No. 1).  Plaintiff signed the original complaint on October 13, 2005, approximately one week after defendant Parmiter's October 6, 2005 denial of plaintiff's October 4, 2005 grievance as untimely.  Plaintiff, thus, has no idea what could have been in that fifth bag of property, even assuming that it was not the "full" bag.  Plaintiff cannot create his own denial of access to courts by refusing to obtain the property that is being held for him.[9]

Notwithstanding the above, the court will focus on whether plaintiff has sufficiently stated actual injury as the result of his alleged denial of legal documents. Plaintiff claims that as a result of defendants' actions, he could not file an "opposition Reply motion to the attorney general's [sic] adverse motion in his Second Circuit Court of Appeals case.  Although plaintiff does not state what papers were missing that prevented him from doing this, the court notes that on December 2, 2005, the Second Circuit reversed the *sua sponte* dismissal of plaintiff's Western District of New York case, and sent the case back to the District Court for further proceedings. *Avent v. New York*, 157 Fed. Appx. 375 (2d Cir. Dec. 2, 2005).

*Avent v. New York* is a case in which plaintiff is again claiming denial of access to courts.  Plaintiff was granted *in forma pauperis* status to pursue the appeal on April 18, 2005. *Id.* at 376.  In the Second Circuit opinion, the court stated that it directed plaintiff to brief "'the specific harm to his civil cases and divorce action that access to

---

[9] The court also notes that although unnecessary to this decision, defendants allege that plaintiff's fifth bag was never destroyed and is still available for plaintiff to ship.  Shipment currently costs $ 19.07. Relf Aff. ¶ 10 (attached to defendants' reply papers).

the law library would have prevented.'" *Id.* at 377.  The court then stated that "[a]fter reviewing Avent's complaint and his brief, we are satisfied that he may be able to state a claim for the denial of access to the courts if given an opportunity to amend his complaint." *Id.*

Clearly, whatever denial of legal materials plaintiff alleges to have suffered, it did not affect his ability to pursue and win his appeal to the Second Circuit.  It is unclear what plaintiff is referring to when he states that he could not file an "opposition Reply Motion" in that case, but even assuming that this statement were true, it did not adversely affect this action.  Thus, plaintiff cannot show "actual injury" in his Second Circuit action.

Plaintiff seems to claim that he was unable to file something in his Southern District of New York habeas corpus action,[10] and that defendants' actions caused plaintiff to be unable to "meet the extended deadlines." AC ¶ 51.  Defendants have submitted as Exhibit F, the Report-Recommendation of the Honorable Magistrate Judge George Yanthis.  Magistrate Judge Yanthis recommended that the court deny plaintiff's habeas corpus action as time-barred. Defendants' Ex. F.

In this case, plaintiff does not allege what materials he was denied that would have changed Magistrate Judge Yanthis's recommendation or the District Court's later affirmance of that recommendation.  This court notes that the Southern District had originally denied the petition as time-barred on September 4, 2003. *Id.* at 2.  The Second Circuit vacated the judgment and remanded to the District Court to allow

---

[10] *Avent v. Filion*, 03 Civ. 6709 (S.D.N.Y.).

plaintiff (then petitioner) notice and opportunity to be heard on the timeliness issue. *Id.* at 3.  Plaintiff filed an amended petition in that case on June 4, 2004, offering an explanation for the delay in filing his petition. *Id.* at 3.  In a footnote, it is clear that then-Chief Judge Mukasey specified exactly what plaintiff was to argue regarding why the petition should be equitably tolled. *Id.* at 3 n.3.

It is clear from Magistrate Judge Yanthis's recommendation that plaintiff had already submitted whatever argument he had in support of his claim that the petition should not be denied as time-barred.  There is absolutely no indication that the denial of any legal materials, beginning in July of 2005 was the cause of the dismissal of plaintiff's habeas action.

Plaintiff also claims that the denial of legal materials adversely affected *Avent v. Solfaro*, 1:02 Civ. 914 (S.D.N.Y.).  At the time plaintiff wrote the amended complaint in this action, plaintiff alleged that he was supposed to file a "final pretrial order" in *Avent v. Solfaro*, and that half of the case exhibits were missing.  As stated by defendants, plaintiff filed *Avent v. Solfaro* on February 6, 2002. Seaman Aff. Ex. A (Docket Sheet in 02 Civ. 914, Dkt. No. 1).  The case proceeded for several years, and on January 23, 2006, plaintiff stated during a telephone conference, that he had lost legal documents when he was transferred to Auburn. *Id.* (Docket Sheet, Minute Entry of Jan. 23, 2006 telephone conference).  The court ordered defendants to make a copy of the case file. *Id.*  Both parties requested that they be able to file motions for summary judgment simultaneously. *Id.*

The docket sheet also shows that on March 15, 2006, a letter addressed to Judge

Casey from Alexander Saunders stated that plaintiff had "all the records that [defendants] have." *Id.*  Thus, plaintiff was able to obtain all the records in the case prior to the motions deadline, and he can show no actual injury to *Avent v. Solfaro*, resulting from any action of any of the defendants in this case.

Finally, plaintiff alleges that he is "precluded from discovery and substantive motion filing in *Avent v. Filion (Annucci)*, 04-CV-302, pending in the Northern District of New York.  Once again, plaintiff has failed to allege what documents he is missing that would prevent him from discovery and "motion filing."  The court notes that plaintiff made a motion to compel on June 12, 2006, restating several dates, including the date that he served his first set of interrogatories on defendants. (Dkt. No. 47).  The motion further states that plaintiff was deprived of his legal materials, and that these materials were "destroyed", however defendants in 04-CV-302 "have sent Avent a copy of his discovery requests on May 9, 2006." *Id.* at 1 (footnote).

Thus, the defendants' actions did not prevent plaintiff from filing a discovery motion, and defendants had apparently already provided plaintiff with a copy of the document that he said he needed.  Defendants filed a response to the motion on July 31, 2006. (04-CV-302, Dkt. No. 58).  Plaintiff filed a reply on August 11, 2006. (04-CV-302, Dkt. No. 59).  On February 6, 2007, Magistrate Judge Treece ***granted*** plaintiff's motion to compel. (04-CV-302, Dkt. No. 61).  The motion to compel filing deadline was extended until April 30, 2007 in order to resolve any issues that might arise regarding defendants' responses to plaintiff's discovery demands, and the dispositive motion deadline has been extended until May 31, 2007. *Id.* at p.7.

Thus, plaintiff has not been injured by any deprivation of his legal materials, and plaintiff's speculative claim that he will be prevented "in the future" from presenting evidence, arguments, and exhibits does not state actual injury resulting from the actions of any of the named defendants in this case. It is clear that any delays in plaintiff's actions were not due to the deprivation of plaintiff's legal materials, and plaintiff's claim that the delays have caused inmate witnesses to be released from prison is simply not related to defendants' alleged actions in this case.[11]

## C. Corrections Officer Jones

The court would simply note that although plaintiff names Corrections Officer Jones as a defendant, it is unclear what claims plaintiff is attempting to make against this officer. Plaintiff claims that he wrote a grievance against defendant Jones, who apparently was the Mid-State Law Library Officer. AC ¶ 21. Plaintiff alleges that one week later, defendant Jones searched plaintiff's cell and placed handcuffs on plaintiff that were so tight that they "could have" cut into plaintiff's skin. AC ¶ 22. Plaintiff then alleges that he and his roommate were denied legal books, paper, envelopes, and carbon paper by defendant Jones on several unspecified occasions. AC ¶ 23. Finally, plaintiff alleges that sometime in September of 2005, defendant Jones told plaintiff in "amusement" that he could have his property. AC ¶ 24.

None of the allegations made against defendant Jones show that anything allegedly done by this defendant denied plaintiff his access to courts. Plaintiff never

---

[11] As stated above, plaintiff may still obtain his fifth bag of property simply by paying the shipping. He may then recover some of the materials that he states are missing.

alleges that any actions taken by this defendant caused plaintiff "actual injury" to any of the actions mentioned in the amended complaint.  The fact that handcuffs were placed on plaintiff tightly so that they "could have" cut him does not rise to the level of a constitutional violation.[12]

## 5.   <u>Motion to Supplement</u>

FED. R. CIV. P. 15(d) allows a party to supplement a pleading with matters that occurred ***after the filing of the original complaint***, ***but pertain to the original pleading***. *Albrecht v. Long Island Rail Road*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991).  A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party." *Id.*  The court may grant a motion to supplement even though the original pleading is defective in its statement of a claim. FED. R. CIV. P. 15(d).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Rule 15(a). *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)(Fisher, M.J.), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993)(Telesca, D.J.). Generally, the court has discretion whether or not to grant leave to amend [a pleading]. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, in exercising this discretion, the court must act pursuant to Fed. R. Civ. P. 15(a), granting leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a); *Id*. at 182.

---

[12] The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'" *Baker v. Willett*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Although plaintiff in this case never raises an Eighth Amendment claim, the court would merely point out that nothing alleged against defendant Jones with respect to the handcuffs would even come close to alleging a constitutional violation in this regard.

In deciding whether to exercise its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir. 1983) (citing *Foman*, 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *Kovian v. Fulton County National Bank*, 86-CV-154, 1992 U.S. Dist. LEXIS 7023 (N.D.N.Y. May 13, 1992). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

On October 23, 2006, plaintiff made a motion for joinder and to supplement pleadings. (Dkt. No. 25). Plaintiff has included a host of exhibits with his motion. (Dkt. No. 25). Defendants have opposed the motion. (Dkt. No. 28). Plaintiff seeks to add ten new defendants and many new allegations to this action. Plaintiff has already filed one amended complaint in this action, and this court has found that the complaint does not state a claim for denial of access to courts.

The court would first note that as argued by defendants, plaintiff has not submitted a supplemental pleading that is numbered sequentially to the pleading that his is attempting to supplement. This failure would mandate the denial of plaintiff's motion in the first instance. However, the court also notes that plaintiff is attempting to add new defendants and claims that are completely unrelated to the central issues in the amended complaint. These unrelated claims include denial of meals in 2005 and 2006 and some disciplinary problems in December of 2005. (Dkt. No. 25). The court

also notes that none of the information submitted by plaintiff affects this court's decision in this case.  Therefore, the court must deny plaintiff's motion for joinder and to supplement.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 22) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**, and it is further

**ORDERED**, that plaintiff's motion for joinder and to supplement (Dkt. No. 25) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 20, 2007

Hon. Gustave J. DiBianco
U.S. Magistrate Judge